```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
MARTIN BITTERMAN,

                           Plaintiff,

        -against-

ANDREW SAUL,¹
Commissioner of Social Security,

                           Defendant.
----------------------------------------------------------------X
```

FILED
CLERK
3/6/2020 5:07 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

For Online Publication Only

**MEMORANDUM & ORDER**
18-CV-01063 (JMA)

**APPEARANCES:**

    Christopher James Bowes, Esq.
    Law Office of Christopher James Bowes
    54 Cobblestone Drive
    Shoreham, New York 11786
    *Attorney for Plaintiff*

    Candace Scott Appleton
    United States Attorney's Office, EDNY
    271 Cadman Plaza East
    Brooklyn, New York 11201
    *Attorney for Defendant*

**AZRACK, United States District Judge:**

Plaintiff Martin Bitterman ("Plaintiff" or "Bitterman") seeks review of the final determination by the Commissioner of Social Security (the "Commissioner"), reached after a hearing before an administrative law judge ("ALJ"), denying Plaintiff disability insurance benefits under the Social Security Act. The case is before the Court on the parties' cross-motions for judgment on the pleadings. For the following reasons, Plaintiff's motion for judgment on the pleadings is DENIED, and the Commissioner's cross-motion is GRANTED.

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

# I. BACKGROUND

## A. <u>Procedural History</u>

Plaintiff filed for disability insurance benefits with the Social Security Administration ("SSA") in August 2014, alleging he was disabled as of January 31, 2003, due to obesity, diabetic neuropathy, kidney disease, heart disease, diabetic retinopathy, and shortness of breath. (Tr. 250–56.[2]) Following denial of his claim, Plaintiff requested a hearing and appeared with his attorney for an administrative hearing before Administrative Law Judge Michelle Allen ("ALJ Allen") on July 6, 2016. (Tr. 70–114.)

In a decision dated November 23, 2016, ALJ Allen denied Plaintiff's claim, finding that Plaintiff was not disabled from January 31, 2003 through June 30, 2009, the date he was last insured, because he could perform his past relevant work as a Police Clerk.[3] (Tr. 7–18.) ALJ Allen's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on December 15, 2017. (Tr. 1–6.) This appeal followed.

## B. <u>Summary of the Relevant Evidence in the Record</u>

Plaintiff was 43 years old in January 2003, when he claims he became disabled at the time of his retirement from the New York City Police Department ("NYPD"). (See Tr. 76, 216.) Plaintiff testified at the administrative hearing that he went on regular retirement (not disability retirement) because his elderly parents were having trouble and needed help, but his assignment was not flexible enough to allow him to take time off to assist them. (Tr. 76, 84–85.) He also stated the job schedule was affecting his sleeping habits. (Tr. 84–86.)

Plaintiff also testified about the characteristics of the various positions he held during his

---

[2] Citations to "Tr." refer to pages of the certified administrative record filed by the Commissioner. (ECF No. 19.)

[3] As Plaintiff did not apply for supplemental security income benefits, in order to qualify for any Social Security benefits, Plaintiff must have been disabled prior to his date last insured.

tenure with the NYPD, and ALJ Allen indicated she would treat them all as different jobs. (Tr. 79.) Most relevant to this appeal, from approximately 1994 until he retired 2003, Plaintiff stated he "had a – primarily administrative job, but there was a little bit of – we were going out – every once in a while, going out with a team, but not – I would not normally be the – just be the – as sort of backup," something that would happen maybe once a month. (Tr. 82–83.) During this period, Plaintiff had three different assignments, first in the auto crime division, then in narcotics, and finally in counterterrorism, the assignment that Plaintiff found to be too inflexible and caused him to retire. (Tr. 83–86.)

The Vocational Expert, Mr. Jay Steinbrenner, (the "VE"), reviewed the record, appeared by telephone, and was present for the entire hearing. Plaintiff's counsel stipulated to the VE's qualifications to testify as a vocational expert. (Tr. 104.) The VE classified the different positions Plaintiff held at the NYPD and opined that the administrative position matched the sedentary job of "Police Clerk" (DOT Number 375.362-010), but said that Plaintiff's assignment with counterterrorism would be classified as "Police Officer, Crime Prevention" (DOT Number 375.264-010). (Tr. 104–06.) Plaintiff's attorney did not object to the VE's classifications of Plaintiff's past relevant work experience or question him about how he made these classifications.

Plaintiff's medical records within the relevant time period are very limited and primarily reflect testing related to Plaintiff's diabetes and visits to his primary physician, Dr. Luciano, beginning in 2006.[4] In addition, in December 2009, approximately six months after Plaintiff's date last insured, Plaintiff visited an ophthalmologist, Dr. Juan Romero, after being referred by the North Shore LIJ emergency department, where Plaintiff had gone due to right eye pain. (Tr. 483.)

---

[4] Plaintiff's attorney confirmed that they made every effort to get whatever medical records they could, but many were too old to obtain. (Tr. 111–12.) He also stated that he did not plan to submit additional evidence after the hearing. (Tr. 74.)

Dr. Romero did some testing and diagnosed proliferative diabetic retinopathy in both eyes and clinically significant macular edema in the left eye. (Id.) He recommended laser treatment. (Id.) The only other treatment record from Dr. Romero, in August 2010, indicates that Plaintiff had received Avastin injections and laser treatment, and suggests that this treatment should continue. (Tr. 481.)

In some of his treatment notes, Dr. Luciano opines that Plaintiff was disabled prior to 2009, a conclusion that is reserved to the Commissioner. Dr. Luciano, however, also filled out a functional assessment form in 2016, opining that from January 31, 2003 to the present, Plaintiff was limited to standing and walking less than one hour in an eight-hour workday and sitting less than four hours in an eight-hour workday. (Tr. 618–19.) The assessment also included limitations in lifting and carrying less than five pounds and only occasional handling and fingering. (Id.)

At the administrative hearing, ALJ Allen highlighted the difficulty in determining, in 2016, Plaintiff's disabled status prior to June 2009. (See Tr. 86–89.) She thus informed Plaintiff that she would consult with a medical expert, and asked Dr. Joseph Gaeta, M.D. to review Plaintiff's medical records and respond to interrogatories regarding the severity of Plaintiff's impairments during the relevant time-period. (Tr. 112–13, 716–20.) Dr. Gaeta opined that between January 31, 2003 and June 30, 2009, Plaintiff could: sit, stand, and walk for six hours in an eight-hour workday; occasionally lift twenty pounds and frequently lift ten pounds; occasionally perform postural changes; and never climb ladders, scaffolds, or ropes. (Tr. 720.)

## C. The ALJ's Decision

ALJ Allen issued her decision on November 23, 2016, applying the five-step process described below, pursuant to 20 C.F.R. § 404.1520. (Tr. 7–18.) ALJ Allen first concluded that Plaintiff last met the insured status on June 30, 2009 and had not engaged in substantial gainful

activity from his alleged onset date of January 31, 2003 through his date last insured of June 30, 2009. (Tr. 12–13.) At step two, ALJ Allen found that, through his date last insured, Plaintiff had severe impairments of morbid obesity, end stage renal failure, stage III (moderate) uncontrolled diabetes mellitus with diabetic retinopathy, hypertension, and ankle edema. (Tr. 13.) At step three, ALJ Allen determined that Plaintiff's impairments, alone or in combination, do not meet or medically equal the severity of any of the regulation's listed impairments. (Id.)

ALJ Allen then addressed step four, first determining that Plaintiff retained the RFC to perform a limited range of sedentary work as defined in 20 C.F.R. § 404.1567(a). (Tr. 13–17.) The additional limitations included: the ability to change from a seated position for five minutes after every ninety minutes of sitting; standing and walking of up to two hours per eight-hour work day; occasionally climbing stairs and ramps, but never scaffolding or ladders; occasional balancing, stooping, and crouching; no kneeling or crawling; avoiding ordinary hazards in the workplace; occasional exposure to moving mechanical parts, to humidity and wetness, to respiratory irritants, and extremes of heat and cold; as well as no exposure to unprotected heights. (Tr. 13–14.)

Based on the RFC and the testimony of the VE, ALJ Allen concluded at step four that, prior to his date last insured, Plaintiff could perform his past relevant work as a "Police Clerk" (DOT Number 375.264-010) as actually and generally performed. (Tr. 17–18.) ALJ Allen thus denied Plaintiff's application for disability insurance benefits because she found he was not disabled from January 31, 2003 through June 30, 2009. (Tr. 18.)

## II. DISCUSSION

### A. Social Security Disability Standard

Under the Social Security Act, "disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled when his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Commissioner's regulations set out a five-step sequential analysis by which an ALJ determines disability. 20 C.F.R. § 404.1520. The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (second alteration in original) (quoting Green–Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). As part of the fourth step, the Commissioner determines the claimant's RFC before deciding if the claimant can continue in his or her prior type of work. 20 C.F.R. § 404.1520(a)(4)(iv). The claimant bears the burden at the first four steps; but at step five, the Commissioner must demonstrate "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009); see also Campbell v. Astrue, No. 12-CV-5051, 2015 WL 1650942, at *7 (E.D.N.Y. Apr. 13, 2015) (citing Melville v. Apfel, 198 F.3d 45, 51 (2d Cir. 1999).

B. <u>Scope of Review</u>

In reviewing a denial of disability benefits by the SSA, it is not the function of the district court to review the record *de novo*, but instead to determine whether the ALJ's conclusions "'are supported by substantial evidence in the record as a whole, or are based on an erroneous legal standard.'" <u>Schaal v. Apfel</u>, 134 F.3d 496, 501 (2d Cir. 1998) (quoting <u>Beauvoir v. Chater</u>, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Perez v. Chater</u>, 77 F.3d 41, 46 (2d Cir. 1996) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). "'To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" <u>Snell v. Apfel</u>, 177 F.3d 128, 132 (2d Cir. 1999) (quoting <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." <u>State of New York ex rel. Bodnar v. Sec. of Health and Human Servs.</u>, 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force." <u>Veino v. Barnhart</u>, 312 F.3d 578, 586 (2d Cir. 2002).

C. <u>Analysis</u>

Plaintiff makes two arguments in support of his motion. First, he claims that ALJ Allen's failure to include any visual functional limitations in the RFC requires remand. In addition, he asserts that ALJ Allen erred at step four in finding that he could perform his past relevant work because he never worked as a "Police Clerk." Both arguments are unavailing.

    **1. ALJ Allen's RFC Finding Was Supported by Substantial Evidence**

An RFC determination specifies the "most [a claimant] can still do despite [the claimant's] limitations." <u>Barry v. Colvin</u>, 606 F. App'x 621, 622 n.1 (2d Cir. 2015) (summary order); <u>see</u>

Crocco v. Berryhill, No. 15-CV-6308, 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017) (stating that an RFC determination indicates the "nature and extent" of a claimant's physical limitations and capacity for work activity on a regular and continuing basis) (citing 20 C.F.R. § 404.1545(b)).

"The Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history." Crocco, 2017 WL 1097082, at *15; see also Barry, 606 F. App'x at 622 n.1 ("In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain.") (quoting 20 C.F.R. § 416.945(a)(3)). Accordingly, the ALJ's RFC assessment is based on a review of the entire record, including, but not limited to, medical opinions. See 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."). An RFC determination must be affirmed on appeal where, as here, it is supported by substantial evidence in the record. Barry, 606 F. App'x. at 622 n.1.

Plaintiff claims that because ALJ Allen determined that his "uncontrolled diabetes mellitus with diabetic retinopathy" was a "severe impairment" at step two, it was error not to include any visual functional limitation in the RFC at step four. (See Pl.'s Mem. at 8–10, ECF No. 15 (citing 20 C.F.R. § 404.1520(c)). However, "an ALJ's decision is not necessarily internally inconsistent when an impairment found to be severe is ultimately found not disabling: the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014) (citing Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995)). "There is thus no inherent error in an ALJ's determination simply because an ALJ finds a plaintiff has a severe impairment, but does not assign

8

corresponding functional limitations." Christine M. v. Saul, No. 18-CV-1358, 2019 WL 5307316, at *3 (N.D.N.Y. Oct. 21, 2019). Accordingly, the lack of any visual functional limitation in the RFC does not itself create error.

Furthermore, neither Plaintiff's treating physician, nor the consultative medical expert, opined that Plaintiff had any visual functional limitations. (See Tr. 618–19; 718–20.) Moreover, although Plaintiff claimed he received some laser treatments for diabetic retinopathy prior to 2009, the only records from Plaintiff's ophthalmologist post-date June 2009.[5] (See Tr. 96–98, 481, 483.) Most critically, however, nothing in the record suggests Plaintiff has any visual functional limitation. Indeed, while the post-June 2009 records reflect some laser treatment for Plaintiff's diabetic retinopathy as well as successful cataract surgery, his eye examinations were found to be within normal limits, and any visual acuity testing reflects near-normal vision.

Thus, the lack of visual functional limitations in Plaintiff's RFC is not inconsistent with ALJ Allen's step two analysis and is supported by substantial evidence.

### 2. ALJ Allen's Finding that Plaintiff Can Perform His Past Relevant Work is Supported by Substantial Evidence

Plaintiff's second argument in favor of remand is that he never worked as a "police clerk," so ALJ Allen erred in her step four conclusion that Plaintiff could perform his past relevant work. (Pl.'s Mem. at 10–12.) Plaintiff cites cases about "composite jobs" to support his assertion that being assigned administrative duties as a "detective" did not mean he was a "police clerk." (Id. at 11–12.) However, Plaintiff concludes his argument by simply claiming that he was a "detective" not a "police clerk."[6] (See id. at 12.) Parsing out his argument, it appears Plaintiff's argument is

---

[5] As noted previously, Plaintiff's attorney confirmed he had obtained all possible records related to any of Plaintiff's eye treatments. (Tr. 111–12.)

[6] Plaintiff makes the same arguments in his Reply papers, again citing some composite job cases, but concluding that he retired in 2003 as a "police detective," not "police clerk." (Pl.'s Reply. Mem. at 2–3, ECF No. 18.)

that the VE improperly classified his job based on the discrete jobs listed in the DOT, not that his job had no counterpart in the DOT so was a "composite job." This claim is without merit.

At the administrative hearing, the VE matched the position at issue, as described by Plaintiff, with the DOT job of "Police Clerk," and Plaintiff did not challenge that classification. An ALJ is generally permitted to "rely on a vocational expert's testimony . . . as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion.'" McIntyre, 758 F.3d at 151 (citing Dumas v. Schweiker, 712 F.2d 1545, 1553–54 (2d Cir.1983)). That is precisely what happened here—Plaintiff cannot identify a false premise on which the VE relied to form his opinion. Accordingly, ALJ Allen properly relied on the VE's opinion classifying Plaintiff's prior work as a "Police Clerk," as well as his opinion that a person with Plaintiff's RFC could return to that job as actually and generally performed, in support of her step four conclusion.

Furthermore, even if ALJ Allen's reliance on the VE's classification of Plaintiff's prior relevant work was not dispositive, Plaintiff has not demonstrated that he performed a "composite job."[7] Composite jobs combine "<u>significant</u> elements of two or more occupations, and, as such, have no counterpart in the DOT." SSR 82-61 (S.S.A. 1982), 1982 WL 31387 (emphasis added). Plaintiff's description of his job made clear that he did almost exclusively administrative work, but that he sometimes had to go out in the field as backup, maybe once a month. (Tr. 82–85.) Thus, considering the VE's opinion together with Plaintiff's own description of his position, the Court finds Plaintiff did not perform a "composite job" as defined by the SSA.

Accordingly, substantial evidence supports ALJ Allen's step four conclusion that Plaintiff could return to his past relevant work as a "Police Clerk" and was thus not disabled for purposes

---

[7] Again, it is not clear from his papers that Plaintiff actually claims that his position was a "composite job." However, the Court addresses this argument out of an abundance of caution.

of receiving disability insurance benefits from January 31, 2003 through June 30, 2009.

## III.  CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's motion for judgment on the pleadings and GRANTS the Commissioner's motion for judgment on the pleadings.  The Clerk of the Court is directed to enter judgment in favor of the Commissioner and close the case.

**SO ORDERED.**

Dated: March 6, 2020
Central Islip, New York

/s/ (JMA)
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE